IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORBERT ALICEA,<br><br>        Plaintiff,<br>v.<br><br>HEALTH ADVOCATE SOLUTIONS, INC.,<br>HEALTH ADVOCATE INC.,<br>TELEPERFORMANCE, and LANGUAGE<br>LINE, LLC.,<br><br>        Defendants. | :<br>:<br>:<br>:<br>:   Case No. 2:24-cv-06005<br>:<br>:<br>:<br>:   **ELECTRONICALLY FILED**<br>:<br>:<br>: |

## **DEFENDANTS' CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS**

Defendants, through counsel, and pursuant to Federal Rule of Civil Procedure 56, file their Concise Statement of Undisputed Material Facts[1] and Joint Appendix of Record Materials in support of their Motion for Partial Summary Judgment, stating as follows:

### **PLAINTIFF, NORBERT ALICEA**

#### *Norbert Alicea: EVP of EAP & Worklife*

1. Plaintiff, Norbert Alicea, was born in January 1962. (JA1171 ¶ 1, JA0006:16-17).

2. He is a licensed psychologist. (JA0016:5-6).

3. Alicea began his employment in 1987 with a predecessor of Defendant Health Advocate Solutions, Inc. ("HAS" or "Company"). (JA1173 ¶¶ 20-21).

4. In 2010, Plaintiff began working for HAS after HAS acquired the company that was employing Alicea at that time. (JA1173 ¶ 22).

---

[1] The facts set forth here are presented in a light most favorable to Plaintiff and for purposes of Defendants' Motion for Partial Summary Judgment only. Defendants do not concede the truth of any of the facts contained here for any purpose other than their Motion for Partial Summary Judgment.

5. At all times relevant to this matter, Alicea was employed by HAS as Executive Vice President of Employee Assistance Programs & Worklife ("EVP of EAP"). (JA1174 ¶ 25).

6. Plaintiff saw himself as the "face" of HAS' EAP division. (JA0065:1-3).

7. He viewed the EAP division as "separate" from HAS' "other side", which Plaintiff defines as HAS' biometrics, nurse line, and wellness operations. (JA0052:13-15).

8. Plaintiff saw himself as the barrier between corporate America and his team. (JA0051:15-23).

9. Plaintiff viewed the EAP division as a stand-alone operational business. (JA0052:4-5).

***Plaintiff's Medical Emergency and Leave of Absence***

10. On October 28, 2022, Plaintiff had a heart attack. (JA1175 ¶ 29).

11. That same day (October 28, 2022), Plaintiff ceased performing any duties as EVP of EAP and began an approved medical leave of absence. (JA1175 ¶ 30).

12. Approximately one week later, and while still on leave, Plaintiff suffered a second heart attack and two strokes, necessitating Plaintiff being placed in a medically induced coma for several days. (JA1175 ¶¶ 31, 34).

13. On or about February 9, 2023, Plaintiff underwent surgery to have a pacemaker implanted. (JA1176 ¶ 40, JA1177 ¶ 50, JA1178 ¶ 59).

14. Plaintiff remained on an approved medical leave from October 28, 2022, and through his separation from employment on June 12, 2023. (JA 1175 ¶ 30, JA1177 ¶ 50).

15. Plaintiff's short-term disability leave extended beyond his separation from employment and until August 10, 2023. (JA0053:17-JA0054:5).

16. At the time of his separation of employment, Plaintiff was 61 years old. (JA1171 ¶ 3).

### *Judy Grant, VP of EAP Operations*

17. Judy Grant was employed by HAS as Vice President of Operations for the EAP Division ("VP of EAP"), reporting directly to Alicea. (JA0043:1-3, JA0087:1-JA0088:17, JA0092:10-19).

18. While Plaintiff was on leave, certain of his EVP of EAP leadership responsibilities were assigned to Grant, but not all of them. (JA0206:2-8).

19. There were not many of Alicea's responsibilities that had to be picked up by Grant, as she already was running the day-to-day operations of the EAP business. (JA0596:23-JA0597:7).

20. After the elimination of the EVP of EAP position, Grant began reporting directly to Kelly, the new COO. (JA0612:6-11, JA0634:15-JA0636:8, JA1066, JA0693:14-23).

21. Other than being tasked to set up one product, Grant's day-to-day responsibilities as VP of EAP remained unchanged. (JA0638:24-640:9, JA1078-JA1082, JA0693:15-22, JA0698:24-JA0700:2).

22. Grant was born in April 1967 and was 56 years old at the time of Plaintiff's separation from employment. (JA0538:6-17).

## HAS REORGANIZES AND RESTRUCTURES

### *HAS Hires a New CEO Who Decides to Restructure its Business*

23. In November 2022, Jeffrey Cordell started working at HAS as its new Chief Executive Officer ("CEO"). (JA0018:23-JA0019:1, JA0171:8-10, JA0247:13-15).

24. Cordell was born in February 1972 and was 51 years old at the time of Plaintiff's separation from employment. (JA0164:21-22, JA1177 ¶ 50).

25. Cordell replaced former CEO Matt Yost, who resigned from HAS in October 2022. (JA0074:2-10, JA0669:4-20).

26. Cordell was made CEO to return HAS to growth. (JA0172:12-17).

27. Cordell was hired by HAS to reinvigorate the business and get the Company back to a thriving position. (JA0172:6-17).

28. When Cordell joined HAS, its operations were suboptimal and relied largely on legacy operations. (JA0177:3-5).

29. When he joined HAS, Cordell had eleven direct reports. (JA1036).

30. Three of those direct reports, including Plaintiff, led to what amounted to separate and independent operations, referred to as "silos." (JA0177:3-11, JA1036).

31. After Cordell was made CEO, the Company worked to eliminate waste, error, and duplication and increase efficiencies. (JA0736:25-JA0737:9).

32. Between February 2023 and May 2023, HAS decided to reorganize its business. (JA0190:1-9).

33. The strategy that HAS elected was to consolidate a number of the existing business products to streamline the Company for efficiency, quality, resilience, and scalability. (JA0172:20-23).

34. That strategy would eliminate redundant functions and autonomous product lines, and would move forward with a configuration that was integrated in leadership, pricing, sales, accounting, and operations. (JA0174:9-20, JA0175:6-20).

### *HAS Restructures its EAP Division, Eliminating its EVP of EAP Role*

35. EAP was operating as a separate business entity at the time and HAS decided to cease operating it that way. (JA0175:21-JA0176:7).

36. HAS leadership determined that its EAP business was inefficient, not operating or growing as it should. (JA0734:20-21).

37. It was determined that the EAP "silo" was not delivering the services that HAS agreed to deliver to its client/customers. (JA0734:21-24).

38. The EAP business' operations were in "shambles" and HAS was fighting to get back in the good graces of a number of customers who were either leaving or threatening to leave HAS because of its poor delivery of its EAP solution. (JA0775:13-JA0776:1).

39. HAS made the decision to move certain of the responsibilities of the EVP of EAP position into other units that could handle those and similar functions more efficiently. (JA0176:23-JA0178:2; JA0685:7-JA0687:10).

40. Cordell came on as CEO in November of 2002 and realigned the businesses, including addressing the need to bridge the gap between advocacy and EAP. (JA0096:19-24).

41. The decision to eliminate the EVP of EAP position occurred between February 2023 and May 2023. (JA0189:2-24).

42. Cordell was the sole decisionmaker in eliminating the EVP of EAP position. (JA0249:5-8).

### *Tara Kelly Becomes COO*

43. Between November 2022 and June 2023, Cordell created a Chief Operating Officer ("COO") position at HAS. (JA0232:4-12).

5

44. Alicea agreed that HAS needed a COO, a position that was needed to bridge the gap between the "advocacy" and EAP divisions. (JA0095:6-JA0096:24).

45. Plaintiff intended to discuss the COO position with former CEO Matt Yost but never did, nor did he discuss it with anyone else at HAS. (JA0095:6-JA0096:24).

46. Cordell selected Tara Kelly for the COO position. (JA0232:4-12, JA00233:5-12, JA0043:13-16, JA0670:6-20).

47. Kelly was born in May 1961. (JA0663:17-18).

48. Prior to becoming COO, Kelly was employed by HAS as a Senior Vice President since 2012. (JA0664:11-21, JA0668:6-22).

49. As Senior Vice President, Kelly managed four of five of HAS' divisions (EAP was the exception), supervised the majority of employees, and had the largest percentage of HAS' caseload. (JA0233:5-12, JA0241:17-JA0242:1, JA664:11-21).

50. Kelly had operational experience in all other divisions of HAS, with the exception of EAP. (JA0686:4-5).

51. Cordell was also able to observe Kelly's performance, believing that she was capable of being COO and was best positioned to perform the role. (JA0233:5-13, JA0237:17-18).

52. The operations function of Plaintiff's EVP of EAP position was reassigned to Kelly as COO. (JA0177:12-JA0178:20, JA0685:7-16).

### MATERIAL COMMUNICATIONS WITH PLAINTIFF

#### *February 21, 2023: In-Person Meeting in Exton, PA*

53. Plaintiff first met Jeff Cordell in person in February of 2023 when Cordell visited HAS' Exton, Pennsylvania location. (JA0054:19-25, JA0270:6-20).

54. In a meeting in Plaintiff's office on that date, Cordell told Plaintiff that Plaintiff would receive 140% of his HAS bonus - totaling $175,000 – for the operations year of 2022. (JA0055:12-JA0056:15, JA1037, JA1176 ¶ 42).

55. Cordell could have prorated Plaintiff's bonus due to Alicea being on leave and unable to work; however, Cordell declined to do that and instead paid to Plaintiff the full amount, which was in excess of 100% of the bonus. (JA0279:20-JA0280:2).

**<u>May 31, 2023: Phone Conversation Between Cordell and Plaintiff</u>**

56. On May 31, 2023, Plaintiff had a phone conversation with Cordell (JA0017:25-JA0018:5).

57. In that call, Plaintiff shared with Cordell that he was having trouble with his memory. (JA0314:16-17).

58. Cordell already had decided to eliminate the EVP of EAP position prior to his call with Alicea on May 31st. (JA0318:10-13, JA1114-JA1115).

59. While the decision to eliminate the EVP of EAP had been made previously, the call was to discuss with Plaintiff how Plaintiff would like to proceed in exiting the company. (JA0318:12-17, JA0326:8-19).

60. During that call, Cordell discussed three "options" with Plaintiff regarding next steps that Plaintiff could choose for exiting the company, and Plaintiff said he wanted to think about it. (JA0325:5-13).

**<u>June 12, 2023: Phone Conversation Among Cordell, Mintzer, and Plaintiff</u>**

61. On June 12, 2023, Plaintiff had a phone conversation with Jeff Cordell and Howard Mintzer. (JA0017:19-24, JA1060).

62. Mintzer was born in February 1990 and has been HAS' Director of Human Resources since 2021. (JA0018:12-15, JA0827:23-24, JA0832:2-10).

63. Plaintiff opened the June 12 call unclear of the topics discussed with Cordell on May 31, alluding to his short-term memory issues. (JA0325:17-20).

64. Plaintiff also had his wife, Mary Anne, listening to the June 12 call because she was his caregiver and Alicea needed to have another set of "ears and eyes." (JA0020:15-JA0021:3).

65. Plaintiff audio-recorded the June 12th call specifically because he was on medical disability recovering from two heart attacks and two strokes and his "cognitive skills weren't as sharp as they should be." (JA0020:15-25).

66. Alicea did not get permission from Cordell or Mintzer to record the call. (JA0023:21-25).

67. In addition, Plaintiff did not disclose to Cordell or Mintzer that his wife was listening. (JA0022:18-20).

68. During this call, Plaintiff asked Cordell to repeat the three "options" he previously discussed with Plaintiff during their May 31 call[2], admitting that his "recall isn't that great" and that he could not remember those options. (JA1121:12-22).

69. In response, Cordell repeated the following three options to Plaintiff, because of the elimination of the EVP of EAP position:

    (a) Alicea could decide to formally retire, and HAS could have either a large picnic or an intimate dinner for him. (JA1123:11-JA1124:22, JA1125:8-JA1127:23, JA1060).

---

[2] In his Complaint, Alicea does not mention Cordell providing him these three options during the May 31st call, despite expressly acknowledging during the June 12th call and during his deposition that Cordell did so. (JA0025:20-24).

8

      (b) Alicea could opt for severance in exchange for a release of claims. (JA1123:11-JA1124:22, JA1125:8-JA1127:23, JA1060, JA1061-JA1065).

      (c) If Alicea was "up for it", he could return to HAS with a consulting agreement when he is able. (JA1123:11-JA1124:22, JA1125:8-JA1127:23, JA1060).

70. Regardless of what Plaintiff selected or when/if he was cleared to return to work, HAS was eliminating the EVP of EAP position. (JA0214:3-10, JA0321:1-11, JA0337:16-JA338:12, JA1114-JA1115).

71. Based upon Plaintiff's statements during the call, Cordell acknowledged that Alicea was not ready to retire and proposed that Plaintiff elect options two and three. (JA1132:8-16, JA1060).

72. Cordell also notified Plaintiff that the EVP of EAP position was being eliminated and would not be refilled, and that severance package paperwork would be forthcoming. (JA1132:17-JA1133:12, JA1060, JA1061-JA1065).

73. Cordell further told Plaintiff that they will work on preparing a Master Services Agreement/Statement of Work for Alicea to work as an independent contractor, subject to Plaintiff being cleared to return to work by his doctor. (JA1133:4-24, JA1135:10-12, JA1060).

74. Mr. Mintzer told Plaintiff – and Plaintiff confirmed his understanding – that HAS's offers of severance and the potential for a contractor position were separate and mutually exclusive of one another. (JA1160:5-15, JA1060).

**_Plaintiff's Assertions Regarding Clearance to Return to Work_**

75. Plaintiff was on a short-term disability leave after his October 2022 medical emergencies and until August 10, 2023, during which he was paid between 50 and 70 percent of his HAS salary. (JA0054:2-14).

9

76. Plaintiff has asserted that he was cleared to return to work with restrictions as of August 10, 2023, at the time he stopped receiving short-term disability benefits. (JA0053:17-JA0054:8, JA0158).

77. Plaintiff did not feel he needed to go on long-term disability, even though he needed a little more time to fully recover cognitively. (JA0071:1-15).

78. Plaintiff did not give HAS any letter clearing him to return him to work; instead, he "kept it on file" in case the Company would reconsider its decision. (JA0077:16-JA0078:8).

79. Between August 2023 and May 2024, Plaintiff did not reach out to anyone regarding a new work position. (JA0078:23-JA0080:18).

80. In May 2024, Plaintiff received a call from Mike Cardillo, an original founder of HAS, currently CEO of Quarvis Health. (JA0064:13-19, https://www.quarvishealth.com/about, JA1111-JA1113).

81. When offered a position by Cardillo in May of 2024 for which Cardillo asked for "whatever [time] you can give me," Plaintiff offered 20 hours a month, beginning in July. (JA0064:3-JA0065:21).

## PLAINTIFF'S ALLEGATIONS OF AGE DISCRIMINATION

82. When Plaintiff was asked what leads him to believe that his age resulted in his separation of employment, he stated it was because:

> (a) He was the oldest person in the EAP division whose employment was terminated on June 12, 2023. (JA0125:23-JA0126:20).
>
> (b) Cordell talked to Alicea about retirement during calls on May 31, 2023, and on June 12, 2023. (JA0125:23-JA0126:20, JA0135:19-JA0136:2).
>
> (c) Judy Grant and Tara Kelly were treated more favorably than he. (JA1166-JA1169).

10

83. Plaintiff does not believe that Mintzer treated Plaintiff differently because of his age. (JA0136:16-JA0137:1).

84. Plaintiff has no idea what Tara Kelly does as the COO of HAS. (JA0094:22-JA0095:1).

85. Plaintiff has never held a COO position. (JA0096:25-JA0097:1).

86. Alicea believes that Kelly is unfit for the COO position because she is not a licensed clinician like he is. (JA0095:8-JA0096:1, JA0097:2-JA0099:15).

87. However, in spite of the fact that Kelly is not be a licensed psychologist, Plaintiff believes that she "may have the knowledge base" to be COO of HAS. (JA0097:23-24).

88. Alicea believes Judy Grant was treated more favorably because she was assigned some of the EVP EAP duties, and she was younger than he. (JA0092:20-JA0093:17).

89. Grant was 56 years old when Plaintiff left HAS in 2023. (JA0538:16-17).

90. In reference to the elimination of the EVP of EAP position, Plaintiff stated that it was eliminated because of both his age and his health. (JA0041:8-10).

91. Alicea further states, "They terminated me because of my age and my health, that's a fact." (JA0108:22-23).

92. Plaintiff has no doubt ("zero doubt"), that had he been healthy, he would still be working at HAS today. (JA0034:22-24).

## INCORRECTLY NAMED DEFENDANTS

### *Teleperformance*

93. "Teleperformance," as named in the Complaint, is not a legal entity, has no parent corporation, nor does any publicly held corporation own 10% or more of its stock. (JA1170-1196, JA1197-1199, JA1200-1202).

94. Teleperformance Group Inc., which is owned by Teleperformance SE, has a division called Specialized Services, which is comprised of a family of companies that operate independently. (JA1197-1199, JA1200-1202, JA0222:6-18).

95. Scott Klein, born in August, 1957, was the CEO of Specialized Services, which includes Defendant LanguageLine Solutions, at times relevant to his matter. (JA0724:20-21, JA0726:9-14).

96. HAS is also one of the companies within the Specialized Services division. (JA0164:6-17).

97. Daniel Julien is the CEO of Teleperformance in Paris, France. (JA0143:5-12).

98. Plaintiff has never spoken to Mr. Julien and "seriously doubt[s] that the CEO of Paris, France was involved in the decision-making of getting Bert Alicea out." (JA0143:5-12).

**_Health Advocate Inc._**

99. "Health Advocate Inc.", as named in the Complaint, is not a legal entity, has no parent corporation or employees, nor does any publicly held corporation own 10% or more of its stock. (JA1197-1199, JA1200-1202).

WHEREFORE, based upon the forgoing Concise Statement of Undisputed Material Facts, and its Memorandum of Law in Support of its Motion for Partial Summary Judgment, Defendants respectfully request that this Court (i) grant their Motion for Partial Summary Judgment; (ii) dismiss Plaintiff's federal and state law claims of age discrimination with prejudice; (iii) dismiss "Teleperformance" and "Health Advocate Inc." from this action, and (iv) award any and all other relief the Court deems just and proper, including fees and costs.

Dated:  July 25, 2025

Respectfully submitted,

**OGLETREE DEAKINS**

*/s/ Maria Greco Danaher*
Maria Greco Danaher, Esq.
PA ID No. 47036
Patrick J. Fazzini, Esq.
PA ID No. 306664
One PPG Place, Suite 1900
Pittsburgh, PA 15222
(412) 315-6040
patrick.fazzini@ogletree.com
maria.danaher@ogletree.com


Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| NORBERT ALICEA,<br><br>   Plaintiff,<br> v.<br><br>HEALTH ADVOCATE SOLUTIONS, INC., HEALTH ADVOCATE INC., TELEPERFORMANCE, and LANGUAGE LINE, LLC.,<br><br>   Defendants. | :<br>:<br>:<br>:<br>: Case No. 2:24-cv-06005<br>:<br>:<br>:<br>: **ELECTRONICALLY FILED**<br>:<br>:<br>: |

## CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2025, a copy of **Defendants' Concise Statement of Undisputed Material Facts** was filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to counsel of record for the Plaintiff.

              */s/ Maria Greco Danaher*
              Maria Greco Danaher
              Counsel for Defendants

14