IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **NORBERT ALICEA,**<br>         **Plaintiff,**<br><br>            v.<br><br>**HEALTH ADVOCATE SOLUTIONS,**<br>**INC.; HEALTH ADVOCATE INC.;**<br>**TELEPERFORMANCE; LANGUAGE**<br>**LINE, LLC,**<br>            **Defendants.** | **CIVIL ACTION**<br><br><br><br>No.  24-6005 |

### MEMORANDUM OPINION

At age sixty-one, while on medical leave, Plaintiff Norbert Alicea was terminated from his job.  He brings this suit against Defendants Health Advocate Solutions, Inc. ("HAS"), Health Advocate Inc., Teleperformance, and Language Line, LLC, alleging they violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951 *et seq.*, under a disparate treatment theory of employment discrimination.

Pursuant to Federal Rule of Civil Procedure 56, Defendants have moved for summary judgment on all claims against Defendants Health Advocate Inc. and Teleperformance, as well as on Alicea's ADEA and age-based PHRA claims.[1]  For the reasons below, Defendants' motion will be granted in part and denied in part.

### I.   FACTUAL BACKGROUND

Plaintiff Alicea is a former employee of Defendant HAS, for which he served, at all times relevant to this matter, as the Executive Vice President ("EVP") of its Employee Assistance

---

[1] Defendants' motion does not address the merits of Alicea's ADA and disability-based PHRA claims.

Program ("EAP") division.

In fall 2022, Alicea suffered a heart attack and began an approved medical leave of absence. Shortly thereafter, he suffered a second heart attack and two strokes. At some point, he was granted short-term disability. In his absence, Judy Grant, who reported directly to Alicea as Vice President of Operations for the EAP division, assumed some of his responsibilities.

While Alicea was on leave, Jeffrey Cordell—who believes his portfolio included a turnaround of HAS's legacy operations, to reinvigorate a business that was not growing as it should have been and to ensure customers received the services they were promised—was hired as HAS's Chief Executive Officer ("CEO"). To that end, he decided to reorganize HAS, including through the consolidation of a number of HAS's existing divisions. One claimed goal of the reorganization was to eliminate redundant functions, including some of the leadership positions directly reporting to Cordell.

Cordell focused on HAS's EAP division because of its perceived inefficiencies and deficiencies. Acting as the sole decisionmaker, he decided to reassign certain responsibilities of Alicea's position to other roles, maintaining that they could handle them more efficiently. He also decided to eliminate Alicea's EVP position.

In a call with Cordell in May 2023, Alicea described his physical and mental recovery, saying that he hoped to return to work in a few months. Cordell, for his part, broached the subject of his planned reorganization. He asked "how [Alicea] would like to proceed," presenting Alicea with three "options": Alicea could retire; accept a severance package; or, transition to an unspecified contractor or consulting role after Alicea was cleared to return to work. Alicea said he needed time to think.[2]

---

[2] In his brief, Alicea asserts that he told Cordell specifically that he had no intention of retiring, but the portion of the record he cites—Cordell's deposition testimony—does not support that assertion. Cordell testified that he could not

2

In another call, approximately two weeks later, Cordell repeated the three options and then informed Alicea that, regardless of which option he selected, HAS was eliminating his EVP position and terminating his employment effective immediately. Alicea expressed his surprise and his belief that his leave of absence spurred Cordell's decisions. Based on Alicea's response, Cordell acknowledged that Alicea might not be ready to retire and proposed that he elect the severance or consulting option.

Alicea chose neither. Instead, he filed a Complaint of Discrimination with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission ("EEOC"), asserting claims of age and disability discrimination. The EEOC issued a Dismissal and Notice of Rights for his Complaint of Discrimination. Alicea then filed this action against HAS, in addition to Defendants Health Advocate Inc., Teleperformance, and Language Line, LLC.

## II. LEGAL STANDARD

A party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson*, 477

recall whether Alicea said he was not ready to retire.

3

U.S. at 248-52). Inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Peters Twp. Sch. Dist. v. Hartford Acc. & Indem. Co.*, 833 F.2d 32, 34 (3d Cir. 1987).

The moving party has the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. The non-moving party must then present affirmative evidence from which a reasonable jury could return a verdict in its favor.[3] *Anderson*, 477 U.S. at 257. Summary judgment will be entered if the "nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Celotex*, 477 U.S. at 323.

### III. DISCUSSION

#### A. Liability of Defendants Health Advocate Inc. and Teleperformance

Alicea was employed by Defendant HAS, whose sister company is Defendant Language Line, LLC.[4] Both firms are owned by a company called Teleperformance Group Inc., which is owned by a publicly traded French company called Teleperformance SE. Furthermore, the record indicates that Defendant Health Advocate Inc. is a trade name of HAS.

Against this backdrop, Defendants seek summary judgment for Health Advocate Inc. and Teleperformance, asserting those entities were not Alicea's employer and are not legal entities. With respect to Health Advocate Inc., however, Defendants fail to cite any legal authority for

---

[3] Alicea "disputed" nearly all of Defendants' facts established through sworn deposition testimony by attacking witness credibility. That is insufficient to create a genuine dispute; he must offer affirmative evidence. *See Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) ("[A]n opponent may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence." (citing *Anderson*, 477 U.S. at 256-57)). Accordingly, it is appropriate to treat as undisputed all facts to which Alicea did not identify contrary record evidence.

[4] The record and the parties' briefs leave Language Line, LLC's presence in this action unexplained. Even so, Defendants do not argue that it lacks a role in this case and should be dismissed.

granting summary judgment, in contravention of Local Rule 7.1.  *See* E.D. Pa. R. Civ. P. 7.1(c) ("Every motion not certified as uncontested . . . shall be accompanied by a brief containing a concise statement of the legal contentions and authorities relied upon in support of the motion."). Local Rule 7.1 requires parties to supply the authorities and articulating the reasoning warranting a decision in their favor, which sharpens the presentation of issues and enables a court to perform its duty.  *Cf. Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp.3d 261, 271-72 (E.D. Pa. 2014) ("[I]t is not the court's responsibility to research the law and construct the parties' arguments for them . . . ." (quoting *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008))).  Accordingly, "[c]ourts in this District have consistently held the failure to cite any applicable law is sufficient to deny a motion as without merit because zeal and advocacy is never an appropriate substitute for case law and statutory authority in dealings with the Court." *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp.2d 506, 511 n.8 (E.D. Pa. 2007) (citations and internal quotation marks omitted).

With respect to "Teleperformance," Defendants state that it is not a legal entity but again fail to provide supporting legal citations.  Defendants seem to argue in the alternative that neither Teleperformance Group Inc. nor Teleperformance SE can be liable for employment discrimination allegedly committed by one of their subsidiaries.  But there is no opportunity to pass on that argument because there is no indication in the record as to which Teleperformance company is the Defendant here.

Thus, because Defendants' arguments are inadequately supported and reasoned, summary judgment for Health Advocate Inc. and Teleperformance is unwarranted.

### B. ADEA and PHRA Age Discrimination Claims

Next, Defendants move for summary judgment on the merits of Alicea's ADEA and

5

PHRA age discrimination claims, arguing he cannot satisfy his evidentiary burden. The legal standards and analysis for the ADEA and the PHRA are the same. *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004). When a plaintiff's employment discrimination claims are predicated on circumstantial evidence, as here, the three-part burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is applied. *Willis v. UPMC*, 808 F.3d 638, 644 (3d Cir. 2015).

Under this framework, the first step is for the plaintiff to establish a *prima facie* case, which creates an "inference of unlawful discrimination." *Id.* (citations omitted). If the plaintiff succeeds, the analysis proceeds to step two: the employer "must 'articulate a legitimate nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 412 (3d Cir. 1999)). If the employer satisfies its "relatively light" burden, then the burden shifts back to the plaintiff to demonstrate that the employer's proffered justification is merely pretext for age discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013) (citing *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)). "The plaintiff must make this showing of pretext to defeat a motion for summary judgment." *Id.* (citing *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008)). By prevailing under the *McDonnell Douglas* framework at summary judgment, a plaintiff meets his burden of establishing that age was the "but-for" cause of his adverse employment action, as required by the ADEA. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009); *Smith v. City of Allentown*, 589 F.3d 684, 691-92 (3d Cir. 2009) ("[W]e conclude that the but-for causation standard required by *Gross* does not conflict with our continued application of the *McDonnell Douglas* paradigm in age discrimination cases.").[5]

---

[5] Defendants aggressively read *Gross* as requiring that age be the "only" reason for an adverse employment decision. Under that interpretation, they argue, Alicea's ADEA claim must fail because he alleges both age and

### i. Prima Facie *Case*

To establish a *prima facie* case of age discrimination based on indirect evidence, a plaintiff must prove: (1) he was at least forty years old; (2) he was qualified for the position in question; and, (3) he suffered an adverse employment action. *Willis*, 808 F.3d at 644 (citing *Teleflex*, 707 F.3d at 426). Defendants concede that Alicea can meet these elements of the *prima facie* case—*i.e.*, that Alicea was over forty years old at the time of his termination, was qualified for the EVP of EAP position, and suffered an adverse employment action because of his position elimination and discharge.

There is, however, a fourth element that varies with "circumstances of the case." *Torre v. Casio, Inc.*, 42 F.3d 825, 830 (3d Cir. 1994) (quoting *Massarky v. General Motors Corp.*, 706 F.2d 111, 118 n.13 (3d Cir. 1983)). In a typical demotion or discharge case, the fourth element requires a plaintiff to demonstrate that he was "replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis*, 808 F.3d at 644 (citing *Teleflex*, 707 F.3d at 426). Alternatively, when an employee is terminated as part of a reduction in force ("RIF"), the fourth element is relaxed: the plaintiff need only prove that "the employer retained someone similarly situated to him who was sufficiently younger." *Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 250 (3d Cir. 2002). As a third option, where an employee is not directly replaced, "the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained[] are more likely than not based on the

---

disability discrimination. In *Gross*, the Supreme Court construed the causality language in the ADEA prohibiting adverse employment actions taken "because of such individual's age." *Gross*, 557 U.S. at 177-78 (citing 29 U.S.C. § 623(a)(1)). The Court held that age must be a "but-for" cause of the decision—not simply a "motivating factor." *Id.* at 174, 176 (citations omitted). Although the Court used phrases such as "the reason" or "the but-for cause," it did not hold that age must be the sole cause. *Id.* at 176 (citations and internal quotation marks omitted). The Third Circuit has likewise made clear that age discrimination need not be the exclusive cause of an adverse employment action. *See Miller v. CIGNA Corp.*, 47 F.3d 586, 594 (3d Cir. 1995) (en banc) (concluding that "'because of' does not mean 'solely because of'").

consideration of impermissible factors.'" *Willis*, 808 F.3d at 644 (quoting *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999)); *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("Even circumstantial-evidence cases do not always require an age gap or a direct replacement."); *Dodson v. Coatesville Hosp. Corp.*, 773 F. App'x 78, 80 n.3 (3d Cir. 2019) ("A plaintiff may also establish the fourth element with . . . other facts sufficient 'to create an inference that an employment decision was based on' age." (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)).

Here, there is a dispute of material fact as to whether Alicea was terminated as part of a RIF or not. Specifically, although his termination was classified as "involuntary, workforce reduction" in HAS's human resources system, Howard Mintzer—HAS's Director of Human Resources, who worked with CEO Jeffrey Cordell on the claimed reorganization—insisted that Alicea was not terminated in connection with a RIF. Likewise, Cordell testified that he could not recall terminating any other full-time member of HAS's leadership, besides Alicea, in 2023.[6] Viewed in the light most favorable to Alicea, as it must be on this summary judgment motion, this evidence brings into question whether Alicea was terminated in connection with a RIF.

As explained above, a different analysis applies if Alicea's discharge was part of a RIF. *See Marzano v. Comput. Sci. Corp. Inc.*, 91 F.3d 497, 506 (3d Cir. 1996). Accordingly, both scenarios are addressed below.

    a. <u>Reduction in Force</u>

Defendants' position is that Alicea was terminated in the context of a RIF. As such, to satisfy the fourth *prima facie* element, he must identify a similarly situated, sufficiently younger

---

[6] Based on a review of Cordell's deposition, Antonio Legorreta, a contractor, was terminated in 2023. Marcia Otto, Vice President of Product Strategy, was terminated in either 2023 or 2024. Moreover, Cordell may have eliminated other leadership positions in 2023—for example, Jay Wolfrum's EVP of Sales position and Raffi Terzian's Senior Vice President of Clinical Operations role. But both Wolfrum and Terzian were reassigned to different roles.

employee who was retained. *Consolidated Rail*, 297 F.3d at 250. The "similarly situated" requirement ensures that the ADEA does not become a "bumping statute" that guarantees positions for protected employees at the expense of younger ones. *Id.* at 249-50. The analysis is a "fact-intensive inquiry" that considers "job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 305 (3d Cir. 2004) (citing *Pivirotto*, 191 F.3d at 357). With respect to the "sufficiently younger" requirement, "there is no particular age difference that must be shown, but while different courts have held that a five year difference can be sufficient, a one year difference cannot." *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir. 1999) (cleaned up) (citation omitted).

In this case, Alicea points to Judy Grant as a retained, comparator employee. Grant worked as Vice President of Operations for the EAP division. She is five years younger than Alicea, which is a sufficient age difference for purposes of the "sufficiently younger" requirement. *See id.* (noting that a five-year differential "can be sufficient"); *see also, e.g.*, *Carter v. Mid-Atlantic Healthcare, LLC*, 228 F. Supp.3d 495, 504 (E.D. Pa. 2017) (concluding that a difference of four years and five months is sufficiently younger).

Defendants, however, argue that Alicea and Grant were not similarly situated, emphasizing that the two had different "supervisory responsibility," *Monaco*, 359 F.3d at 305, because Alicea managed the EAP division while Grant reported directly to him. Additionally, Defendants note that although Grant reported to a different individual after Alicea's discharge, her position in HAS's chain of command remained unchanged.

Alicea does not address Defendants' argument or even posit that he and Grant were similarly situated. Instead, in a single-sentence response, he notes only that Grant took on some

9

of the responsibilities of his EVP role during his medical leave.  Although that fact is supported by the record, Alicea's failure to "squarely argue[]" that he and Grant were similarly situated is fatal to his *prima facie* case.  *See John Wyeth & Bro. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing . . . but not squarely argued, are considered waived.").[7]

Thus, given the difference between Alicea's and Grant's supervisory statuses and the absence of any countervailing considerations, Alicea cannot meet the fourth element of the *prima facie* case if the evidence establishes he was terminated as part of a RIF.  *See Monaco*, 359 F.3d at 305-07 (rejecting as a matter of law a comparison between a regional vice president and the managers whom he directly supervised in the absence of other evidence indicating the managers were similarly situated).  Summary judgment will therefore be granted in favor of Defendants to the extent Alicea was terminated as part of a RIF.  *See id.* at 307 (affirming the grant of summary judgment where the plaintiff could not establish the fourth *prima facie* element).

    b.  <u>Non-Reduction in Force</u>

Defendants predicate their summary judgment motion on Alicea's inability to establish a *prima facie* case in a RIF scenario.  But if a factfinder concluded—as Alicea contends it should—that he was not terminated in a RIF, a different standard applies.  Specifically, when, as

---

[7] Even if Alicea had explicitly argued that he and Grant were similarly situated, summary judgment would still be appropriate.  An employee can suffer an adverse employment action for any number of reasons.  Like the *prima facie* prong requiring a plaintiff to prove he was qualified for his position, the similarly situated requirement eliminates one possible explanation for why a plaintiff was treated differently from their colleagues during a RIF: differences in their roles.  *See Consolidated Rail*, 359 F.3d at 250 (rejecting plaintiffs' attempted comparison with "entry-level positions or other low-level positions" because the plaintiffs "failed to show that the duties were comparable or that they were otherwise similarly situated").  Here, Alicea's evidence does not eliminate a role-based explanation for his and Grant's differing treatment.  As the record indicates, Grant stepped in to perform aspects of Alicea's job only because of the exigency of his leave.  When he was formally terminated, the responsibilities that Grant had been performing were reassigned to other HAS employees.  Accordingly, Alicea's evidence fails to show that he and Grant were similarly situated under ordinary circumstances, meaning he fails to rule out the possibility that differences between Grant's Vice President role and his EVP position impelled HAS to retain Grant while discharging him.

here, an individual is terminated but not replaced, the fourth *prima facie* element is established through "facts which 'if otherwise unexplained[] are more likely than not based on the consideration of impermissible factors.'" *Willis*, 808 F.3d at 644 (quoting *Pivirotto*, 191 F.3d at 352). Defendants do not argue that there are insufficient facts from which a reasonable jury could conclude that Alicea meets this standard, *see Teleflex*, 707 F.3d at 426, so whether there are need not be decided.

        ii.    *Defendants' Legitimate, Nondiscriminatory Reason*

Assuming then that Alicea can meet his *prima facie* burden to the extent the facts establish that he was not terminated in a RIF, the analysis still must proceed because Defendants separately argue that Alicea cannot establish pretext. That inquiry starts with step two of *McDonnell Douglas*, in which "the burden of production shifts to [Defendants] to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, 589 F.3d at 690 (citing *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997)). Defendants need not "prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action. Instead, [they] must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons." *Willis*, 808 F.3d at 644 (citing *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

Defendants have identified record evidence supporting their contention that Alicea's termination was nondiscriminatory. At the time Cordell became HAS's CEO, he had somewhere between eleven and fourteen direct reports. Some of these direct reports led to what amounted to separate and independent operations, referred to as "silos." According to Cordell, this operational structure was suboptimal, so he worked to "smash smilos" and generally eliminate redundant functions and autonomous product lines to integrate leadership, pricing, sales,

accounting, and operations.

The EAP division, headed by Alicea, was one of the silos operating as a separate business entity. According to Teleperformance Group's CEO, Scott Klein, the EAP division was in "shambles," neither growing as it should nor delivering the services that HAS agreed to deliver to its clients, leading to numerous client complaints. Based on these facts, Cordell decided to reassign certain responsibilities of Alicea's EVP position to other roles. Consequently, he also decided to eliminate the EVP of EAP position and terminate Alicea's employment.

Defendants have satisfied their burden under step two of *McDonnell Douglas*.

### iii. Pretext

To create a genuine issue of material fact as to whether Defendants' proffered reason is pretextual, Alicea must point to evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764; *see also C.A.R.S.,* 527 F.3d at 370 (framing the inquiry as whether a factfinder could infer that the employer's reason was "either a *post hoc* fabrication or otherwise did not actually motivate the employment action").

Alicea primarily focuses on *Fuentes*' first prong, attacking directly HAS's articulated reasons. Under this prong, he must adduce evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence' . . . ." *Fuentes*, 32 F.3d at 765 (emphasis in original) (quoting *Ezold v. Wolf, Block, Schoor & Solis-Cohen*, 983 F.2d 509, 531 (3d Cir. 1992)). The evidence must address "the core facts put forward by the employer as the legitimate reason for its decision." *Tomasso*, 445 F.3d

at 706 (citing *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)).

Alicea's evidence of pretext substantially overlaps with his evidence indicating he was not terminated as a part of a RIF. Indeed, Defendants' nondiscriminatory justification paints a picture of a company with an overcrowded leadership structure that required streamlining and the elimination of redundant positions. However, Mintzer stated that Alicea was not terminated as part of a RIF, and Alicea seems to have been the only full-time member of the leadership team terminated in 2023. These inconsistencies in the RIF narrative, standing alone, are likely sufficient to defeat summary judgment. *See id.* at 708-09 (reversing a grant of summary judgment where the evidence told "radically different stories" and "flatly contradict[ed]" the employer's nondiscriminatory rationale).

Alicea, however, makes two further points. First, he notes that Defendants have offered inconsistent explanations on whether his performance was a factor in his discharge. Cordell testified that Alicea's performance was not a factor in his decisionmaking, but Klein testified that it was.[8] This divergence is another basis for a jury to conclude that Defendants' efficiencies-based explanation is pretextual.

Second, to further discredit Defendants' explanation, Alicea notes that Cordell struggled in his deposition to articulate the perceived inefficiencies with the EVP of EAP role, which is the "core fact[]" for Alicea's adverse employment determination. *Id.* at 706. Indeed, Cordell was unable to describe the features of Alicea's position that he perceived as redundant in the broader scheme of HAS's business.

---

[8] Defendants dispute this portion of Klein's testimony, arguing it reflects counsel's question and not Klein's words. Counsel asked, "And did Cordell tell you that part of the reason why he was planning to eliminate Bert's position was because Bert was underperforming, or words to that effect?" Klein's response was unambiguous: "Yes." Thus, it is appropriate to treat counsel's words as Klein's testimony.

Alicea's attacks on HAS's stated reasons for his termination create "the paradigmatic case in which each party has produced testimony and evidence that conflicts on the ultimate issue": whether Alicea was discharged as part of a RIF or because of his age. *Sempier v. Johnson & Higgins*, 45 F.3d 724, 733 (3d Cir. 1995). The resulting conflict must be resolved by a jury and cannot be resolved on summary judgment. Summary judgment will therefore be denied to the extent the facts establish Alicea was not discharged in a RIF. *See Fuentes*, 32 F.3d at 764 ("[I]f the plaintiff has pointed to evidence sufficiently to discredit the defendant's proffered reasons, to survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case." (citations omitted)).

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

---

**WENDY BEETLESTONE, C.J.**